MOSLEY & ASSOCIATES
Walter Mosley, Esq. (SBN 244169)
wm@waltermosleyesq.com
Carlos E. Montoya, Esq. (SBN 317057)
cem@waltermosleyesq.com
Nathalie Meza Contreras, Esq. (SBN 322545)
nmc@waltermosleyesq.com
1055 W. 7th St., 33rd Floor
Los Angeles, California 90017
Telephone: (213) 232 - 3886

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| YAPHETTE GEIGER; JETHRO GEIGER; K.S., a minor, by and through their Guardian, BRANDIE SMITH; K.G., a minor, by and through their Guardian, BRANDIE SMITH; and N.G., a minor, by and through their Guardian, ASIA LEE HERON,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Unreasonable Search and Seizure – Detention and Arrest (42 U.S.C. § 1983)<br>2. Unreasonable Search and Seizure – Excessive Force (42 U.S.C. § 1983)<br>3. Unreasonable Search and Seizure – Denial of Medical Care (42 U.S.C. § 1983)<br>4. Substantive Due Process – (42 U.S.C. § 1983)<br>5. Municipal Liability for Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)<br>6. Municipal Liability – Failure to Train (42 U.S.C. § 1983)<br>7. False Arrest / False Imprisonment<br>8. Battery (Wrongful Death)<br>9. Negligence (Wrongful Death)<br>10. Violation of Bane Act (Cal. Civil Code § 52.1)<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR DAMAGES**

1. Plaintiffs YAPHETTE GEIGER, JETHRO GEIGER, K.S., a minor, by and through their Guardian, BRANDIE SMITH, K.G., a minor, by and through their Guardian, BRANDIE SMITH, and N.G., a minor by and through their Guardian, ASIA LEE HERON, for their complaint against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and Does 1-10, inclusive, allege as follows:

**INTRODUCTION**

2. This civil rights action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the fatal police shooting of the DECEDENT, Kershawn Geyger.

**PARTIES**

3. At all relevant times, Kershawn Geyger ("DECEDENT") was an individual residing in the County of Sacramento, California.

4. Plaintiff YAPHETTE GEIGER is an individual residing in Sacramento County, California, and was at all relevant times the natural mother of DECEDENT. YAPHETTE GEIGER sues in her individual capacity and seeks wrongful death damages under federal and state law.

5. Plaintiff JETHRO GEIGER is an individual residing in Sacramento County, California, and was at all relevant times the natural father of DECEDENT. JETHRO GEIGER sues in his individual capacity and seeks wrongful death damages under federal and state law.

6. Plaintiff K.S. is a minor individual residing in the County of Sacramento, California, and is the natural born child to DECEDENT. K.S. sues by and through their natural mother and Guardian, BRANDIE SMITH. K.S. sues both in their individual capacity as the child of DECEDENT and in a representative capacity as a successor-in-interest to DECEDENT. K.S. seeks both survival and wrongful death damages under federal and state law.

7. Plaintiff K.G. is a minor individual residing in the County of Sacramento, California, and is the natural born child to DECEDENT. K.G. sues by and through their natural mother and Guardian, BRANDIE SMITH. K.G. sues both in their individual capacity as the child of DECEDENT and in a

representative capacity as a successor-in-interest to DECEDENT. K.G. seeks both survival and wrongful death damages under federal and state law.

8. Plaintiff N.G. is a minor individual residing in the County of Sacramento, California, and is the natural born child to DECEDENT. N.G. sues by and through their natural mother and Guardian, ASIA LEE HERON. N.G. sues both in their individual capacity as the child of DECEDENT and in a representative capacity as a successor-in-interest to DECEDENT. N.G. seeks both survival and wrongful death damages under federal and state law.

9. At all relevant times, Defendant COUNTY OF SACRAMENTO ("COUNTY") is and was a duly organized "public entity" within the definition of Cal. Gov. Code §811.2. COUNTY was responsible for the hiring, training, and supervising of the conduct of its employees and agents of the COUNTY and the SACRAMENTO COUNTY SHERIFF'S DEPARTMENT and all SACRAMENTO COUNTY SHERIFF'S DEPARTMENT deputies and members.

10. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT ("SCSD") is a "public entity" within the definition of Cal. Gov. Code § 811.2. Defendant SCSD is a public entity subject to suite under 42 U.S.C. § 1983.

11. Defendants DOES 1 to 10 and and/or were agents or employees of Defendants COUNTY and/or SCSD who were acting under the color of law within the course and scope of their respective duties as sheriff deputies and with the complete authority and ratification of COUNTY and/or SCSD.

12. On information and belief, at all relevant times, DOES 1 to 10 were residents of the County of Sacramento, California. DOES 1 to 10 are sued in their individual capacity for damages only.

13. In doing the acts and failing and omitting to act as hereinafter described, Defendants DOES 1 to 10 were acting on the implied and actual permission and consent of COUNTY and SCSD.

14. At all times mentioned herein, each and every COUNTY and SCSD defendant was the agent of each and every other COUNTY and SCSD defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every COUNTY and SCSD defendant.

15. The true and correct names of Defendants DOES 1 to 10, inclusive, are unknown to Plaintiffs, who therefore sue these defendants by such fictitious names. Plaintiffs will seek leave to amend this complaint to show the true names and capacities of these defendants when they have been ascertained.

Each of the fictitious named defendants is responsible in some manner for the conduct and liabilities alleged herein.

16.  On June 11, 2021, Plaintiffs served their claims for damages with COUNTY pursuant to applicable sections of the California Government Code.

17.  On July 7, 2021, COUNTY rejected Plaintiffs' claims for damages.

18.  By the time of the filing of this Complaint, COUNTY and SCSD has not issued its findings as to whether DOES 1 to 10 were found to be within policy, whether they will be disciplined or not, and whether COUNTY and SCSD has ratified their use of deadly force against DECEDENT. Accordingly, Plaintiffs reserve the right to amend this Complaint once the COUNTY and/or SCSD has issued its findings as to the involved deputies' use of deadly force.

**JURISDICTION AND VENUE**

19.  This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the Fourth and Fourteenth Amendments of the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

20.  Venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendants reside in, and all incidents, events, and occurrences giving rise to this action occurred in the County of Sacramento, California.

**FACTS COMMON TO ALL COUNTS**

21.  Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 20 of this Complaint with the same force and effect as if fully set forth herein.

22.  On or about January 15, 2021, DECEDENT and his brother, JW Geiger ("JW"), were stopped on Rampart Drive, south of Winding Way, in the Carmichael neighborhood of Sacramento, California by two SCSD deputies, a detective and sergeant.

23.  Shortly after DECEDENT and JW got into their car and DECEDENT turned on the car, an SCSD detective and sergeant pulled up to their car. One SCSD unmarked vehicle pulled up behind their car and the other unmarked vehicle pulled up on the driver side of the car. As the SCSD detective that pulled up on the driver side walked towards the car, one of the SCSD deputies was heard saying "hands, hands, hands!" DECEDENT and JW complied with the order and put their hands up. Then, the

detective on the driver side discharged his firearm at DECEDENT. After approximately three (3) or four (4) shots, the sergeant on the passenger side also began discharging his firearm. DECEDENT was struck, including shots to his chest, causing DECEDENT serious physical injury and eventually killing him.

24. The detective first fired at DECEDENT while he was seated in his car and as he raised his arms as instructed by the deputies.

25. At the time of the shooting, there were no visible weapons in the vehicle.

26. At the time of the shooting, DECEDENT posed no immediate threat of death or serious physical injury to either deputies, or any other person, especially since there were no visible weapons in the vehicle and he was seated in the vehicle, raising his hands when he was shot, including multiple shots to his chest.

27. Both the SCSD detective and sergeant did not give DECEDENT and JW a verbal warning that deadly force would be used prior to shooting DECEDENT multiple times, despite it being feasible to do so and they did not issue appropriate commands to DECEDENT. Further, the involved deputies did not announce themselves as deputies prior to the shooting.

28. DECEDENT never verbally threatened anyone prior to being fatally shot by the SCSD detective and sergeant. Further, the involved deputies did not observe DECEDENT commit any crime and there was no information that DECEDENT had physically injured anyone.

29. The involved deputies shot DECEDENT even though he was not an immediate threat of death or serious bodily injury to the officers or anyone else and there was other less than lethal options available. The detective and sergeant did not show reverence for human life. The involved deputies are responsible for every single shot they fired, and this was not an immediate defense of life situation.

30. On information and belief, Defendants detective and sergeant, DOES 1 and 2, respectively, had no information that DECEDENT had committed a felony.

31. After striking DECEDENT, the detective and sergeant did not provide or summons timely medical attention for DECEDENT, who was bleeding profusely and had obvious serious injuries, and the detective and sergeant also did not allow and prevented responding medical personnel on-scene to timely render medical aid/assistance to DECEDENT.

32. On information and belief, Defendants DOES 1 and 2 continue to work as deputies, patrolling the streets of Sacramento without consequences or discipline for their involvement in the fatal shooting of DECEDENT.

33. Plaintiff YAPHETTE GEIGER was dependent on DECEDENT, including financially dependent.

34. DECEDENT's minor children were dependent on DECEDENT, including financially dependent.

## COUNT ONE

**Unreasonable Search and Seizure – Detention and Arrest (42 U.S.C. § 1983)**

(By All Plaintiffs against Defendants Does 1-2)

35. Plaintiffs reallege each and every allegation in paragraph 1 through 34 of this Complaint with the same force and effect as if fully set forth herein.

36. Defendants DOES 1-2 caused DECEDENT to be detained and they attempted to arrest DECEDENT in violation of his right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

37. As a result of the conduct of DOES 1-2, they are liable for DECEDENT's injuries because they were integral participants to the violations of DECDENT's rights.

38. The DECEDENT was detained without reasonable suspicion by DOES 1-2 and they attempted to arrest DECEDENT without probable cause.

39. The conduct of DOES 1-2 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to DOES 1-2.

40. Accordingly, Defendants DOES 1-2, are each liable to Plaintiffs for compensatory and punitive damages, including both survival damages and wrongful death damages, under 42 U.S.C. § 1983.

41. Plaintiffs also seek attorney fees under this claim.

///

## COUNT TWO

**Unreasonable Search and Seizure – Excessive Force (42 U.S.C. § 1983)**

(By All Plaintiffs against Defendants Does 1-2)

42. Plaintiffs reallege each and every allegation in paragraph 1 through 41 of this Complaint with the same force and effect as if fully set forth herein.

43. DOES 1-2's unjustified shooting deprived DECEDENT of his right to be secure in his persons against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

44. The unreasonable use of force by Defendants DOES 1-2 deprived the DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

45. As a result, DECEDENT suffered extreme mental and physical pain and suffering, loss of enjoyment of life and eventually suffered a loss of life and of earning capacity. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses and a loss of financial support.

46. As a result of the conduct of DOES 1-2, they are liable for DECEDENT's injuries because they were integral participants in the excessive force.

47. The use of deadly force was excessive because this was not an immediate defense of life situation, the involved officers did not give a verbal warning that deadly force would be used despite it being feasible to do so, there were no commands given and there were other reasonable options available other than shooting and killing DECEDENT.

48. This use of deadly force was excessive and unreasonable under the circumstances, especially since DECEDENT was unarmed with his hands up when the shots were fired, including shots to his chest. Defendants' actions thus deprived DECEDENT of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

49. The conduct of DOES 1-2 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOES 1-2.

50. Plaintiffs bring this claim as successors-in-interest to the DECEDENT and seek both survival and wrongful death damages for the violation of DECEDENT's rights.

51. Plaintiffs also seek attorney fees under this claim.

## COUNT THREE

**Unreasonable Search and Seizure – Denial of Medical Care (42 U.S.C. § 1983)**

(By All Plaintiffs against Defendants Does 1-2)

52. Plaintiffs reallege each and every allegation in paragraph 1 through 51 of this Complaint with the same force and effect as if fully set forth herein.

53. The denial of medical care by Defendants Does 1-2 deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

54. As a result, DECEDENT suffered extreme mental and physical pain and suffering and eventually suffered a loss of life and earning capacity. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses and a loss of financial support.

55. Defendants DOES 1-2 knew that failure to provide timely medical treatment to DECEDENT could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing DECEDENT great bodily harm and death.

56. After shooting DECEDENT multiple times, DOES 1-2 did not timely summon or provide timely medical attention for DECEDENT, who was bleeding profusely and had obvious serious injuries, and DOES 1-2 also did not allow and prevented responding medical personnel on-scene to timely render medical aid/assistance to DECEDENT.

///

57. The conduct of Defendants DOES 1-2 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to Defendants Does 1-2.

58. Plaintiffs bring this claim as successors-in-interest to DECEDENT and seek both survival and wrongful death damages for the violation of DECEDENT's rights.

59. Plaintiffs also seek attorney fees under this claim.

## COUNT FOUR

### Substantive Due Process (42 U.S.C. § 1983)

(By All Plaintiffs against Defendants Does 1-10)

60. Plaintiffs reallege each and every allegation in paragraph 1 through 59 of this Complaint with the same force and effect as if fully set forth herein.

61. YAPHETTE GEIGER had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including, but not limited to, unwarranted state interference in Plaintiff's familial relationship with her son, DECEDENT.

62. JETHRO GEIGER had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including, but not limited to, unwarranted state interference in Plaintiff's familial relationship with his son, DECEDENT.

63. K.S. had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including, but not limited to, unwarranted state interference in Plaintiff's familial relationship with their father, DECEDENT.

64. K.G. had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including, but not limited to, unwarranted state interference in Plaintiff's familial relationship with their father, DECEDENT.

///

65. N.G. had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including, but not limited to, unwarranted state interference in Plaintiff's familial relationship with their father, DECEDENT.

66. As a result of the excessive force by DOES 1-2, DECEDENT died. Plaintiffs YAPHETTE GEIGER, JETHRO GEIGER, K.S., K.G., and N.G. were thereby deprived of their constitutional right of familial relationship with DECEDENT.

67. DOES 1-2, acting under color of state law, thus violated the Fourteenth Amendment rights of YAPHETTE GEIGER, JETHRO GEIGER, K.S., K.G., and N.G. to be free from unwarranted interference with their familial relationship with DECEDENT.

68. The aforementioned actions of DOES 1-2, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of DECEDENT and Plaintiffs YAPHETTE GEIGER, JETHRO GEIGER, K.S., K.G., and N.G. with purpose to harm unrelated to any legitimate law enforcement objective.

69. Defendants DOES 1-2, acting under color of state law, thus violated the Fourteenth Amendment rights of DECEDENT and Plaintiffs.

70. As a direct and proximate cause of the acts of DOES 1-2, Plaintiffs suffered extreme and severe mental anguish and pain and have been injured in mind and body. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses and a loss of financial support.

71. As a result of the conduct of DOES 1-2, they are liable for DECEDENT's injuries because they were integral participants in the denial of due process.

72. The conduct of DOES 1-2 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOES 1-2.

73. Plaintiffs bring this claim individually and seek wrongful death damages for the violation of Plaintiffs' rights.

74. Plaintiffs also seek attorney fees under this claim.

## **COUNT FIVE**

**Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

(By All Plaintiffs against Defendants DOES 3-10, County, and SCSD)

75. Plaintiffs reallege each and every allegation in paragraph 1 through 74 of this Complaint with the same force and effect as if fully set forth herein.

76. On and for some time prior to January 15, 2021 (and continuing to the present date), Defendants COUNTY and SCSD, deprived Plaintiffs and DECEDENT of the rights and liberties secured to them by the Fourth and Fourteenth Amendments to the United States Constitution, in that said defendants and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of Plaintiffs and DECEDENT, and of persons in their class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

   a. Employing and retaining as deputies and other personnel, including DOES 1-2, whom Defendants DOES 3-10, at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written COUNTY and/or SCSD policies;

   b. Of inadequately supervising, training, controlling, assigning, and disciplining COUNTY and SCSD deputies, and other personnel, who Defendants COUNTY and SCSD knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

   c. By failing to adequately train deputies, including DOES 1-2, and failing to institute appropriate policies, regarding the use of excessive force, including deadly force;

   d. By having and maintaining an unconstitutional policy, custom, and practice of using excessive force, including deadly force, which also is demonstrated by inadequate training regarding these subjects. The policies, customs, and practices of DOES 3-10, COUNTY, and SCSD, were done with deliberate indifference to individuals' safety and rights; and

-11-
COMPLAINT FOR DAMAGES

   e. Of totally inadequately training COUNTY and/or SCSD deputies, DOES 1-2, with respect to shooting unarmed individuals, including, but not limited to, individuals with their hands up.

77. By reason of the aforementioned policies and practices of Defendants Does 3-10, DECEDENT was severely injured and subjected to pain and suffering, and ultimately, lost his life.

78. Defendants DOES 3-10, COUNTY, and SCSD, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge, as stated above, these defendants condoned, tolerated, and through actions and inactions, thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of DECEDENT, Plaintiffs, and other individuals similarly situated.

79. By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, Defendants DOES 3-10, COUNTY, and SCSD, acted with an intentional, reckless, and callous disregard for the life of DECEDENT, and DECEDENT's and Plaintiffs' constitutional rights. Defendants DOES 3-10, COUNTY, and SCSD, each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

80. Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by Defendants DOES 3-10, COUNTY, and SCSD were affirmatively linked to and were a significantly influential force behind the injuries of DECEDENT and Plaintiffs.

81. By reason of the aforementioned acts and omissions of Defendants DOES 3-10, COUNTY, and SCSD, Plaintiffs were caused to medical expenses, incur funeral and related burial expenses, and loss of financial support.

82. By reason of the aforementioned acts and omissions of Defendants DOES 3-10, COUNTY, and SCSD, Plaintiffs have suffered loss of love, companionship, affection, comfort, care, society, and future support.

83. Accordingly, Defendants DOES 3-10, COUNTY, and SCSD, each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

84. Plaintiffs seek wrongful death and survival damages under this claim.

85. Plaintiffs also seek attorney fees under this claim

## COUNT SIX

### Municipal Liability – Failure to Train (42 U.S.C. § 1983)

(By All Plaintiffs against Defendants DOES 3-10, County, and SCSD)

86. Plaintiffs reallege each and every allegation in paragraph 1 through 85 of this Complaint with the same force and effect as if fully set forth herein.

87. While acting under the color of state law and within the course and scope of their employment as deputies for the COUNTY and SCSCD, DOES 1-2's shooting of DECEDENT, who was unarmed and holding his hands up at the time of the shooting, deprived DECEDENT of his rights and liberties secured to him by the Fourth and Fourteenth Amendments, including his right to be free from unreasonable search and seizure.

88. The training policies of the defendants COUNTY and SCSD were not adequate to train its deputies, including but not limited to, DOES 1-2, with regards to using deadly force. As a result, COUNTY and SCSD deputies, including DOES 1-2, are not able to handle the usual and recurring situations which they must deal, including making contact with unarmed individuals holding their hands up. Those inadequate training policies existed prior to the date of this incident and continue to this day.

89. The Defendants COUNTY and SCSD were deliberately indifferent to the known or obvious consequences of its failure to train its deputies, including DOES 1-2, adequately with regards to using deadly force. This inadequate training includes failing to teach officers to give a verbal warning when feasible prior to using deadly force, to give commands when feasible prior to using deadly force, to take cover when the officers believe an individual is armed, to distinguish when an individual is not a threat when holding their hands in the air as directed by deputies, to announce themselves as police and to use less than lethal options, prior to resorting to the use of deadly force.

90. COUNTY and SCSD was aware that failure to implement some sort of training with regards to their officers' use of deadly force and dealing with unarmed suspects, including suspects with their hands in the air as directed by deputies, would result in continuing to have numerous unreasonable deputy-involved shootings of unarmed individuals annually.

91. The failure of the Defendants COUNTY and SCSD to provide adequate training with regards to using deadly force, caused the deprivation of the Plaintiff's rights by DOES 1-2. In other words, the Defendants' failure to train is so closely related to the deprivation of the Plaintiffs' rights as to be the moving force that caused the ultimate injury.

92. By failing to provide adequate training to COUNTY and SCSD's deputies, including DOES 1-2, Defendants 3-10, acted with intentional, reckless, and callous disregard for the life of DECEDENT, and DECEDENT's and Plaintiff's constitutional rights. Defendants DOES 3-1-, each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

93. By reason of the aforementioned acts and omissions of Defendants DOES 3-10, Plaintiffs were caused to incur medical expenses, incur funeral and 24 related burial expenses, and loss of financial support.

94. By reason of the aforementioned acts and omissions of Defendants DOES 3-10, Plaintiffs have suffered loss of love, companionship, affection, comfort, 27 care, society, and future support.

95. Accordingly, Defendants DOES 3-10, each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

96. Plaintiffs seek wrongful death and survival damages under this claim.

97. Plaintiffs also seek statutory attorney fees under this claim.

**COUNT SEVEN**

**False Arrest/False Imprisonment (Cal. Govt. Code § 820 and California Common Law)**

(Wrongful Death)

(By All Plaintiffs against All Defendants)

98. Plaintiffs reallege each and every allegation in paragraph 1 through 97 of this Complaint with the same force and effect as if fully set forth herein.

99. Defendants DOES 1-2, while working as police officers for COUNTY and SCSD, and acting within the course and scope of their duties, intentionally deprived DECEDENT of his freedom of movement by use of force, threats of force and unreasonable duress when Defendants DOES 1-2 shot DECEDENT multiple times and killed him. Defendants DOES 1-2 intentionally shot at DECEDENT in

order to detain him. Defendants DOES 1-2 also detained DECEDENT without reasonable suspicion. There was an attempt by DOES 1-2 to arrest DECEDENT without probable cause.

100. DECEDENT did not knowingly or voluntarily consent to his detention or attempted arrest. On information and belief DECEDENT did not feel that he was free to leave as he sat in his car with his hands up. By shooting and killing DECEDENT, Defendants DOES 1-2, deprived DECEDENT, who had his hands up in the air as directed by deputies, of his liberty without justification. Further, Defendants DOES 1-2 did not have probable cause to believe that DECEDENT, specifically, had committed any crime.

101. The conduct against DECEDENT by Defendants DOES 1-2, by shooting multiple shots at DECEDENT, was a substantial factor in causing the harm of DECEDENT, namely his death.

102. COUNTY and SCSD is vicariously liable for the wrongful acts of Defendants DOES 1-2 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

103. The conduct of Defendants DOES 1-2 was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of DECEDENT, entitling Plaintiffs to an award of exemplary and punitive damages.

104. Plaintiffs are seeking both survival and wrongful death damages under this claim.

## COUNT EIGHT

**Battery (Cal. Govt. Code § 820 and California Common Law)**

(Wrongful Death)

(By All Plaintiffs against All Defendants)

105. Plaintiffs reallege each and every allegation in paragraph 1 through 104 of this Complaint with the same force and effect as if fully set forth herein.

106. DOES 1-2, while working as police officers for the COUNTY and SCSD, and acting within the course and scope of their duties, intentionally shot DECEDENT multiple times, including shots to his chest, while DECEDENT sat in his car with his hands up as directed by deputies, striking DECEDENT multiple times. Further, DECEDENT was unarmed at the time of the shooting with nothing

in his hands and the involved deputies did not give any verbal warning or commands prior to shooting DECEDENT. The use of deadly force was also unreasonable because there were clearly less than lethal options available. As a result of the actions of DOES 1-2, DECEDENT suffered severe mental and physical pain and suffering, loss of enjoyment of life, and, ultimately died from his injuries and lost earning capacity. DOES 1-2 had no legal justification for using deadly force against DECEDENT and said Defendants' use of force while carrying out their duties as deputies was an unreasonable use of force, especially since DECEDENT was unarmed with his hands up when he was fatally shot without verbal warning.

107. As a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs suffered extreme and severe der of mental anguish and pain and have been injured in mind and body. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses and a loss of financial support.

108. COUNTY and SCSD are vicariously liable for the wrongful acts of DOES 1-2 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

109. The conduct of DOES 1-2 was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiffs and DECEDENT, entitling Plaintiffs, individually and as successors-in-interest to DECEDENT, to an award of exemplary and punitive damages.

110. Plaintiffs bring this claim both individually and as successors-in-interest to DECEDENT and seek both survival and wrongful death damages.

## COUNT NINE

**Negligence (Cal. Govt. Code § 820 and California Common Law)**

(Wrongful Death)

(By All Plaintiffs against All Defendants)

111. Plaintiffs reallege each and every allegation in paragraph 1 through 110 of this Complaint with the same force and effect as if fully set forth herein.

112. The actions and inactions of the Defendants were negligent, including, but no limited to:

    a. The failure to properly and adequately train employees, including DOES 1-2, with regards to the use of force, including deadly force;

    b. The failure to properly and adequately assess the need to detain, arrest, and use force, including deadly force against DECEDENT;

    c. The negligent tactics and handling of the situation with DECEDENT, including pre-shooting negligence;

    d. The negligent detention, arrest, and use of force, including deadly force, against DECEDENT;

    e. The failure to provide and/or summons prompt medical care to DECEDENT;

    f. Shooting an unarmed individual who had nothing in his hands while they were up in the air as directed by deputies;

    g. The failure to give a verbal warning or any kind of command prior to shooting; and

    h. The failure to properly train and supervise employees, both professional and non-professional, including DOES 1-2.

113. As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, DECEDENT was caused to suffer severe pain and suffering, and ultimately died and lost earning capacity. Also, as a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs suffered extreme and severe mental anguish and pain and have been injured in mind and body. Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs also are claiming funeral and burial expenses and a loss of financial support under this claim.

114. COUNTY and SCSD are vicariously liable for the wrongful acts of DOES 1-2 pursuant to section 815.2 of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

///

-17-
COMPLAINT FOR DAMAGES

115. Plaintiffs bring this claim individually and as successors-in-interest to DECEDENT and seek both survival and wrongful death damages.

## COUNT TEN

### Violation of the Bane Act (Cal. Civil Code § 52.1)

(By All Plaintiffs against Defendants Does 1-2)

116. Plaintiffs reallege each and every allegation in paragraph 1 through 115 of this Complaint with the same force and effect as if fully set forth herein.

117. California Civil Code, Section 52.1 (the Bane Act), prohibits any person from interfering with another person's exercise or enjoyment of his constitutional rights by threats, intimidation, or coercion (or by the use of unconstitutionally excessive force).

118. Conduct that violates the Fourth Amendment of the United States Constitution violates the California Bane Act.

119. Defendants DOES 1-2's use of deadly force was excessive and unreasonable under the circumstances, especially since DECEDENT was unarmed with his hands up in the air when he was fatally shot. Further, the involved officers did not give a verbal warning or any commands prior to fatally shooting DECEDENT, despite being feasible to do so. Defendants' actions thus deprived DECEDENT of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

120. The DECEDENT was detained without reasonable suspicion and DOES 1-2 attempted to arrest DECEDENT without probable cause. Defendants' actions thus deprived DECEDENT of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

121. Does 1-2 intentionally violated DECEDENT's rights under § 1983 by detaining DECEDENT without reasonable suspicion, by attempting to arrest DECEDENT without probable cause, and by using excessive deadly force against DECEDENT, including but not limited to, shooting the unarmed DECEDENT without warning, including shots to his chest while he held his hands up in the air. Further, these acts by DOES 1-2 demonstrate that they had a reckless disregard for DECEDENT's constitutional rights.

122. At the time of the shooting, DECEDENT did not pose an immediate threat of death or serious bodily injury, and DECEDENT never verbally threatened anyone prior to the shooting. There is direct and circumstantial evidence that DOES 1-2 intentionally violated DECEDENT's rights under § 1983 by unlawfully detaining him, by attempting to unlawfully arrest him, and by fatally shooting DECEDENT multiple tines, including shots to his chest while he was holding his hands up.

123. DOES 1-2, while working as deputies for COUNTY and SCSD, and acting within the course and scope of their duties, interfered with or attempted to interfere with the rights of DECEDENT to be free from unreasonable searches and seizures, to equal protection of the laws, to access to the courts, and to be free from state actions that shock the conscience, by threatening or committing acts involving violence, threats, coercion, or intimidation. DECEDENT, an African-American male, was also racially profiled by the involved deputies.

124. DECEDENT was caused to suffer extreme mental and physical pain and suffering and eventually suffered a loss of life and of earning capacity. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses and a loss of financial support.

125. The conduct of DOES 1-2 was a substantial factor in causing the harms, losses, injuries, and damages of DECEDENT and Plaintiffs.

126. COUNTY and SCSD are vicariously liable for the wrongful acts of DOES 1-2 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

127. The conduct of DOES 1-2 was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of DECEDENT entitling Plaintiffs to an award of exemplary and punitive damages.

128. Plaintiffs bring this claim as successors-in-interest to the DECEDENT and seek survival damages for the violation of DECEDENT's rights.

129. The Plaintiffs also seek attorney fees under this claim.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Yaphette Geiger, Jethro Geiger, K.S., a minor, K.G., a minor, and N.G., a minor, request entry of judgment in their favor against Defendants County of Sacramento, Sacramento County Sheriff's Department, and DOES 1-20, inclusive, as follows:

A. For compensatory damages in excess of $100,000,000, including both survival damages and wrongful death damages under federal and state law, in the amount to be proven at trial;

B. For funeral and burial expenses, and loss of financial support;

C. For punitive damages against the individual defendants in an amount to be proven at trial;

D. For treble damages under Civil Code Section 52.1;

E. For interest;

F. For reasonable costs of this suit and attorneys' fees; and

G. For such further other relief as the Court may deem just, proper, and appropriate.

DATED: January 5, 2022                     **MOSLEY AND ASSOCIATES**

By: _____
Walter Mosley, Esq.
Carlos E. Montoya, Esq.
Nathalie Meza Contreras, Esq.
Attorneys for Plaintiffs
YAPHETTE GEIGER, JETHRO GEIGER,
K.S, K.G., AND N.G.

# DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

DATED: January 5, 2022                     **MOSLEY AND ASSOCIATES**

By: _____
Walter Mosley, Esq.
Carlos E. Montoya, Esq.
Nathalie Meza Contreras, Esq.
Attorneys for Plaintiffs
YAPHETTE GEIGER, JETHRO GEIGER,
K.S, K.G., AND N.G.